# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

COREY LYONS,

      **Petitioner,**

      v.

WARDEN, BELMONT
CORRECTIONAL INSTITUTION,

      **Respondent.**

                   **CASE NO. 2:18-cv-548**
                   **JUDGE JAMES L. GRAHAM**
                   **Magistrate Judge Chelsey M. Vascura**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### Facts and Procedural History

The Ohio Seventh District Court of Appeals summarized the facts and procedural history of the case as follows:

> {¶ 2} Captain John Lemal of the Steubenville Police Department was on late night patrol when he witnessed a fight occurring at Club 106 and called for assistance. When he exited his vehicle, Lemal noted that several people were pushing and screaming. He advised the two groups to separate. About half of the group went back inside the bar; however, three to four females and Lyons began walking north in the parking lot of Club 106.

> {¶ 3} Lemal heard a metallic sound as something hit the gravel, at which point Lemal could see it was a Smith and Wesson firearm. Officer Nate Cline arrived on the scene and Lemal pointed out the weapon to Cline, and ordered everyone to immediately stop. Lyons did not stop; he began to walk faster. Lemal observed Lyons reach into the right side of his coat or pants prompting Lemal to draw his own weapon and pursue Lyons. Lyons removed a .40 Ruger and threw it near a vehicle parked outside the club. The Ruger was loaded and had one round in the chamber. Thereafter, Lyons fled and officers were unable to locate him.

{¶ 4} The grand jury indicted Lyons for having a weapon while under disability, tampering with evidence, carrying a concealed weapon and failure to comply with the order of a police officer. The matter proceeded to trial and the parties stipulated that Lyons was subject to a weapons disability and not permitted to have a weapon for any reason.

{¶ 5} Lyons was convicted of all charges, and sentenced to three years for having a weapon as a convicted felon, two years for tampering with evidence, eighteen months for carrying a concealed weapon, all to be served consecutively. Lyons was sentenced to six months for his misdemeanor failure to comply conviction to be served concurrently with his felony sentences.

Indoctrination

{¶ 6} In his first of six assignments of error, Lyons asserts:

Lyons' convictions should be reversed because the prosecutor indoctrinated the jury in voir dire, substantially affecting Lyons' right to a fair trial.

***

{¶ 11} In his second of six assignments of error, Lyons asserts:

The prosecutor's reason to preemptively strike the only black juror from the jury was race central, not race neutral under *Batson*, and the prosecutor's additional reason to exercise her preemptory strike was a pretext for unconstitutional discrimination.

***

{¶ 18} For clarity of analysis the remaining assignments of error will be discussed out of order. In his fifth of six assignments of error, Lyons asserts:

Lyons tampering with evidence should be reversed as a matter of law under *Straley.*

***

{¶ 23} In his third of six assignments of error, Lyons asserts:

Lyons' convictions should be reversed because his trial counsel was deficient at trial, with resulting prejudice.

***

{¶ 35} In his sixth of six assignments of error, Lyons asserts:

Lyons' weapons under disability, tampering with evidence, and carrying concealed weapon offenses should have been merged, because Lyons received multiple convictions for the same offense.

\*\*\*

{¶ 44} In his fourth of six assignments of error, Lyons asserts:

Because of cumulative error, Lyons was denied his right to a fair trial: By the prosecutor's indoctrination of the jury during voir dire; the paneling of a partial jury; and defendant's ineffectiveness at trial.

*State v. Lyons*, 93 N.E.3d 139 (Ohio Ct. App. 2017). On June 15, 2017, the appellate court affirmed the judgment of the trial court. *Id.* On January 31, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal. *State v. Lyons*, 151 Ohio St.3d 1509 (Ohio 2018).

On June 5, 2018, Petitioner filed this habeas corpus Petition. He asserts as follows:

1. The state cannot strike a black juror by using a race-central reason for its peremptory challenge because that is per se discriminatory under the Equal Protection Clause.

2. Lyons received three punishments for offenses that are allied under R.C. 2941.25, in violation of the Double Jeopardy Clause, and *State v. Ruff*, 143 Ohio St.3d 114[.]

3. The state's evidence that Lyons Tampered With Evidence was legally insufficient under the Due Process Clause and *State v. Straley*, 139 Ohio St.3d 339[.]

It is the position of the Respondent that Petitioner's claims are without merit.

**Standard of Review**

Because Petitioner seeks habeas relief under 28 U.S.C. § 2254, the standards of the Antiterrorism and Effective Death Penalty Act ("the AEDPA") govern this case. The United States Supreme Court has described the AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court" and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme

malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt.") (internal quotation marks, citations, and footnote omitted).

The AEDPA limits the federal courts' authority to issue writs of habeas corpus and forbids a federal court from granting habeas relief with respect to a "claim that was adjudicated on the merits in State court proceedings" unless the state court decision either

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Further, under the AEDPA, the factual findings of the state court are presumed to be correct:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

Accordingly, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts."  *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)), *cert. denied sub nom. Coley v.*

*Robinson,* 134 S.Ct. 513 (2013). The United States Court of Appeals for the Sixth Circuit has summarized these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,] or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a different result. *Williams v. Taylor*, 529 U.S. 362, 405. 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id*. at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Id*. at 748-49. The burden of satisfying the AEDPA's standards rests with the petitioner. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**Claim One**

In claim one, Petitioner asserts that the prosecutor unconstitutionally used a peremptory challenge to strike the only African-American on the jury panel. The state appellate court rejected this claim, reasoning as follows:

> {¶ 12} The Equal Protection Clause of the United States Constitution prohibits purposeful discrimination in the exercise of a peremptory challenge to excuse *144 a juror based upon race. *Batson v. Kentucky*, 476 U.S. 79, 89, 106 S.Ct. 1712, 1719, 90 L.Ed.2d 69 (1986). The United States Supreme Court outlined a three-step process for evaluating claims that a prosecutor has used peremptory challenges unconstitutionally; first, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. *Id*. at 96–97, 106 S.Ct. 1712. Second, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. *Id*. at 97–98, 106 S.Ct. 1712. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. *Id*. at 98, 106 S.Ct. 1712. An appellate court will not reverse the trial court's decision there was no discrimination unless it is clearly erroneous. *See State v. Hernandez*, 63 Ohio St.3d 577, 583, 589 N.E.2d 1310 (1992).

> {¶ 13} Lyons satisfied the first element of a prima facie case; counsel objected after the prospective juror—who was the only African–American—was

dismissed. Consequently, the burden shifted to the prosecutor to articulate a race-neutral explanation for striking the juror in question. The State responded:

All right. There are a couple things. We have—the State has concerns about two jurors who have had family members prosecuted by prosecutors in Jefferson County, one is Mr. [J], the other is Mr. [R] that's in the first row. We haven't yet gotten to any of the preempts but it's the same concern about each of those potential jurors. The only one of the two of them that's the same concern about that both of them, only one of them is African–American. So, there was some additional questioning by myself and [defense counsel] about that.

Mr. [J] lives on Spring Avenue, which is in downtown Steubenville. He is the only African–American on the panel and his facial expressions and his answers were a little bit different when I asked "Would you feel pressure to acquit him or would you be scared if you voted guilty in this case?" And so he's—he's answering one way but certainly he—he paused and he grimaced about the idea that it is difficult quite frankly for people that live in the downtown area or the hilltops, particularly when they're African–American, to vote.

On top of that and I know there was some leading questions when [defense counsel] had a chance to explain to him that he would be guided by the spirit, that he would be in prayer during the witnesses and during the deliberations and that he would be meditating.

And I think the combination of the family members with prior convictions in Jefferson County prosecuted by Jefferson County, the location, his reaction to being asked about having to either acquit or find another African–American guilty, combined with his reliance on the spirit and meditation during the trial and during the deliberations are enough for there to be a race neutral reason to excuse that juror.

I will tell [defense counsel] I will likely excuse Mr. [R] for one of the same reasons, that it seems to be painful for him that he had a stepson who's now dead who's been prosecuted numerous times by people in this county.

{¶ 14} Lyons argues that the reasons given by the prosecutor were not race-neutral. The State responds that Lyons actually brought up the issue of race first during voir dire. After he did, she followed up with questioning. It was at that time that prospective Juror J disclosed that when he gets into a serious situation that he lets "the spirit tell me what to do" and that "it would be the same" in terms of jury deliberations.

{¶ 15} It is not a heavy burden for the State to articulate a racially-neutral reason for using a peremptory strike. The State gave multiple, neutral reasons for using a peremptory challenge against prospective Juror J: he would be guided by the spirit and meditating during trial and deliberations; he had a child that was prosecuted

in Jefferson County; and because his verbal answers did not match his facial expressions when issues of race were discussed. Finally, prospective Juror R, who is white, also had a family member prosecuted and was also excused by a peremptory strike.

{¶ 16} The third *Batson* element provides the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination. Here, the trial judge answered in the negative:

And he made me nervous when he was going to have some spirit telling him what to do in the jury room because the spirit isn't going to testify and the spirit is not the law from the Court and I don't care what color the spirit is, that's not what his verdict should be based on and I don't know that that's a challenge for cause but it's certainly a basis for a peremptory challenge.

And then if he's got all these relatives who were prosecuted by Jefferson County prosecutors, you know, I think that's an issue too. I think a white juror who stood up there and said "I'm going to have the Jury—I'm going to have some—I'm going to talk to some spirit and he's going to tell me what to do and—and yeah, all my relatives have been prosecuted by prosecutors in this county" (sic) and she wanted—you know, I would preempt him if I was her.

And so I'm going to allow it...

{¶ 17} As the reasoning offered by the State was race-neutral, the trial court did not err in granting the peremptory challenge. Accordingly, Lyons' second assignment of error is meritless.

*State v. Lyons,* 93 N.E.3d at 143-45.

As discussed by the state appellate court, once a criminal defendant establishes that the prosecutor has exercised a peremptory challenged based on race, the prosecution must articulate a "race-neutral" explanation for use of the peremptory challenge, and the trial court then determines whether the defendant has met his burden of establishing purposeful discrimination. *Hernandez v. New York*, 500 U.S. 352, 358 (1991). "Although the prosecutor must present a comprehensible reason, '[t]he second step of this process does not demand an explanation that is persuasive, or even plausible'; so long as the reason is not inherently discriminatory, it suffices." *Rice v. Collins*, 546 U.S. 333, 338 (2006) (citing *Purkett v. Elem*, 514 U.S. 765, 767-768 (1995)

(*per curiam*)).  "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike."  *Purkett*, 513 U.S. at 768 (citation omitted).

Moreover, this Court defers to the trial court's evaluation of the prosecutor's credibility in evaluating the race-neutral explanation for the peremptory challenge.  *See Russell v. Bunting*, 722 F. App'x 539, 549 (6th Cir. 2018) (citing *Davis v. Ayala*, -- U.S. --, 135 S.Ct. 2187, 2201 (2015); *Miller-el v. Cockrell*, 537 U.S. 322, 339 (2003)).  "The Supreme Court has emphasized that trial-court findings on the issue of discriminatory intent must be afforded 'great deference.' " *Lundy v. Turner*, No. 3:16-cv-1727, 2018 WL 2338868, at *20 (N.D. Ohio Apr. 18, 2018) (citing *Hernandez v. New York*, 500 U.S. 352, 364–66 (1991)).  The state court's determination of whether the prosecutor intended to discriminate constitutes a "question of historical fact" that is presumed to be correct unless rebutted by clear and convincing evidence.  *Id.* (citing *Lancaster v. Adams*, 324 F.3d 426, 429 (6th. Cir. 2003) (citing *Hernandez*, 500 U.S. at 367).  Further, and under the provision of 28 U.S.C. § 2254(d)(2), a federal habeas court can only grant relief if the trial court unreasonably credited the prosecutor's race-neutral explanations for the *Batson* challenge.  *Moore v. Mitchell*, 708 F.3d 760, 801 (6th Cir. 2013) (citing *Rice v. Collins*, 546 U.S. at 338).  "[W]here '[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, ... habeas review ... does not suffice to supersede the trial court's credibility determination.' " *Braxton v. Gansheimer,* 561 F.3d 453, 463 (6th Cir. 2009) (quoting *Rice*, 546 U.S. at 341–42).

Petitioner argues that the prosecutor violated *Batson* by removing Jesse James, Jr., the only African American from the jury, based on James' race as an African American because the prosecutor indicated that he removed James because James grimaced when asked if he could enter a guilty verdict and improperly assumed on this basis that James could not vote impartially

due to Petitioner's race as an African American. (*Reply*, ECF No. 7, PAGEID # 539-40.)

Petitioner maintains that the Ohio Court of Appeals ignored this "race-focused" reason for the

prosecution's exclusion of the sole African American on the jury panel, in rejecting his claim.

(*See id.*)

"[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely

on account of their race or on the assumption that black jurors as a group will be unable

impartially to consider the State's case against a black defendant." *Batson,* 476 U.S. at 89.

Here, however, the record does not reflect that the trial court unreasonably credited the

prosecutor's race-neutral explanations for the *Batson* challenge, *i.e*., that James had a son who

had been murdered (*Transcript*, ECF No. 6-1, PAGEID # 258-60), stated that he would rely on

the spirit during jury deliberations (PAGEID # 276-79), and grimaced when asked if he would

feel pressured to return a not guilty verdict. "A juror's body language is a permissible basis for a

race-neutral challenge." *Moore v. Mitchell*, 708 F.3d 760, 802 (6th Cir. 2013) (citing *Braxton*,

561 F.3d at 462). Petitioner has failed to establish that the appellate court based its decision on

an unreasonable determination of the facts in light of the evidence presented or that it

contravened or unreasonably applied federal law.

Claim one is without merit.

**Claim Two**

In claim two, Petitioner asserts that his convictions constitute allied offenses of similar

import, in violation of the Double Jeopardy Clause because they arose from a single act with a

single animus. The state appellate court rejected this claim as follows:

{¶ 35} . . . Lyons asserts:

Lyons' weapons under disability, tampering with evidence, and carrying concealed weapon offenses should have been merged, because Lyons received multiple convictions for the same offense.

{¶ 36} R.C. 2941.25(A) provides when the same conduct involves two or more allied offenses of similar import, the defendant may only be convicted of one offense. R.C. 2941.25(B) states when a defendant's conduct involves two or more dissimilar offenses, or when the conduct is similar but is committed separately or with a separate animus, the defendant may be convicted of all offenses. Merger is a sentencing question, not an additional burden of proof for the state at trial. *State v. Washington,* 137 Ohio St.3d 427, 2013-Ohio-4982, 999 N.E.2d 661, ¶ 18. The Supreme Court of Ohio has consistently recognized that a defendant bears the burden of establishing his entitlement to merger as codified in R.C. 2941.25. *Id.* Merger of allied offenses presents a question of law this Court reviews de novo. *State v. Burns*, 7th Dist. No. 09-MA-193, 2012-Ohio-2698, 2012 WL 2237270, ¶ 60.

{¶ 37} The Ohio Supreme Court recently addressed the applicable standard when determining whether offenses merge as allied offenses of similar import. *State v. Ruff,* 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892.

Rather than compare the elements of two offenses to determine whether they are allied offenses of similar import, the analysis must focus on the defendant's conduct to determine whether one or more convictions may result, because an offense may be committed in a variety of ways and the offenses committed may have different import. No bright-line rule can govern every situation.

As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when the defendant's conduct supports multiple offenses: (1) Were the offenses dissimilar in import or significance?; (2) Were they committed separately?; and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered.

*Ruff* at ¶ 30–31.

{¶ 38} Lyons argues that his convictions for having weapons under disability, tampering with evidence and carrying concealed weapons charges are allied offenses of similar import and should merge for sentencing purposes.

{¶ 39} The Eighth District has considered merger post–Ruff involving a weapons under disability charge in conjunction with carrying concealed weapon.

It is possible to commit the offenses of carrying a concealed weapon and having a weapon while under disability with the same conduct. R.C. 2923.12(A)(2), carrying concealed weapons, prohibits a person from knowingly carrying or having, concealed on the persons' person or concealed ready at hand, a handgun. R.C. 2923.13(A)(2), having weapons under disability, prohibits a person who is under indictment or has been convicted of any felony of violence, from knowingly acquiring, having, carrying, or using any firearm or dangerous ordnance. Accordingly, it is certainly possible to commit both carrying a concealed weapon and having a weapon while under disability with the same conduct. However, we must determine whether the two offenses were in fact committed with a separate animus.

In *State v. Rice*, 69 Ohio St.2d 422, 433 N.E.2d 175 (1982), syllabus, the Ohio Supreme Court held that the crimes of carrying a concealed weapons and having weapons while under disability are not allied offenses of similar import and may be committed separately and with a separate animus. Recent courts, including this court, have continued to apply the *Rice* reasoning even after the decision in *Ruff* and *Johnson* where we are to look at the defendant's conduct. This court in *State v. Street*, 8th Dist. Cuyahoga No. 102096, 2015-Ohio-2520, 2015 WL 3899393, and the Tenth District in *State v. Hobbs*, 10th Dist. Franklin No. 14AP-225, 2015-Ohio-2419, 2015 WL 3822239, held that *Ruff* does not change the rationale or validity of *Rice* and its progeny because *Ruff* still prohibits merger if the offenses are committed with separate animus. *Hobbs* at ¶ 35, citing *Ruff* at ¶ 31; *Street* at ¶ 15.

*State v. Carradine,* 2015-Ohio-3670, 38 N.E.3d 936 (8th Dist.), ¶ 56–57.

{¶ 40} Lyons, who was under a weapons disability, acquired a firearm. Afterwards, but before encountering Lemal at Club 106, Lyons made the decision to conceal the firearm. When Lemal saw a weapon on the ground near Lyons, Lemal ordered Lyons not to move, but Lyons fled the scene. While Lemal was in pursuit he watched as Lyons removed the firearm from his waistband and threw it to the ground. Lyons' conduct of acquiring the firearm and concealing it in his waistband resulted in two different offenses that were committed separately and with a separate animus. It is the defendant's burden to establish his right to merger. Accordingly, the trial court did not err in failing to merge the weapons under disability and carrying concealed weapon charges.

{¶ 41} Lyons next argues that his tampering with evidence conviction should merge with one of the weapons convictions. He was convicted of tampering with evidence, which required proof that he knew an official proceeding or investigation was in progress and that he attempted to conceal a thing with the purpose to impair its availability as evidence in such proceeding or investigation.

R.C. 2921.12(A)(1). Lyons was also convicted of having a weapon under disability as a result of acquiring and possessing a firearm, R.C. 2923.13(A)(3), and carrying a concealed weapon which required proof that he knowingly carried or concealed on his person a deadly weapon or dangerous ordnance. R.C. 2923.12(A)(2).

{¶ 42} These offenses are distinct and were committed with a separate animus or motivation. First, Lyons acquired and possessed a firearm at some time prior to the fight at the club. Second, Lyons then concealed the firearm when he placed it in his waistband. Finally, he discarded the firearm while being chased by police; specifically, to conceal the firearm with the purpose to impair its availability as evidence. A review of the elements that constitute the charges of tampering with evidence, having a weapon under disability and carrying a concealed weapon demonstrate not only that the offenses are not aligned, but the crimes are so dissimilar that the commission of one in no way automatically results in the commission of the other.

{¶ 43} Accordingly, the trial court did not err in failing to merge these offenses and Lyons sixth assignment of error is meritless.

*State v. Lyons*, 93 N.E.3d at 148-49.

Petitioner argues that the state appellate court improperly applied an "elemental analysis" in rejecting his claim, that he committed only one act, and that Ohio's legislature did not intend cumulative punishments under these circumstances. (*Reply*, ECF No. 7, PAGEID # 542-44.) The Court is not so persuaded. The appellate court based its decision on the test referred to by Petitioner and set forth by the Ohio Supreme Court in *Ruff,* 143 Ohio St.3d at 114, concluding that Petitioner had committed three distinct acts that involved separate animus or motivation. Further, this conclusion does not constitute an unreasonable determination of the facts in light of the evidence that was presented.

Claim two therefore lacks merit.

**Claim Three**

In claim three, Petitioner asserts that the evidence is constitutionally insufficient to sustain his conviction on tampering with evidence, as no evidence indicated that he knew police

were investigating his possession of a firearm or suspected he was in possession of the firearm at

when he threw it to the ground.  The state appellate court rejected this claim as follows:

> Lyons asserts:
>
>> Lyons tampering with evidence should be reversed as a matter of
>> law under *Straley*.
>
> {¶ 19} A sufficiency challenge measures whether there is sufficient evidence to
> send the case to the jury or support a verdict as a matter of law. *State v.
> Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). In essence,
> sufficiency is a test of adequacy and whether the state met its burden of
> production. *State v. Fullerman,* 7th Dist. No. 99 CA 0314, 2001 WL 1700425, *4.
> Whether the evidence is legally sufficient is a question of law. *State v. Robinson*,
> 162 Ohio St. 486, 124 N.E.2d 148 (1955). On appeal, the issue is whether the trier
> of fact could find the essential elements of the offense were proven beyond a
> reasonable doubt after construing the evidence in a light most favorable to the
> state. *State v. May*, 2011-Ohio-6637, 970 N.E.2d 1029, ¶ 58 (7th Dist.).
>
> {¶ 20} Tampering with evidence is defined as "No person, knowing that an
> official proceeding or investigation is in progress, or is about to be or likely to be
> instituted, shall do any of the following: (1) Alter, destroy, conceal, or remove
> any record, document, or thing, with purpose to impair its value or availability as
> evidence in such proceeding or investigation [.]" R.C. 2921.12(A)(1).
>
> {¶ 21} Lyons relies on *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11
> N.E.3d 1175. *Straley* was stopped for an alcohol related offense, but the police
> opted not to charge her. While making arrangements to get her a ride home,
> Straley ran 20 to 30 feet away to urinate, and officers discovered a cellophane
> baggie containing crack cocaine where Straley had urinated after she had walked
> away. She was convicted of tampering with evidence and the Second District
> reversed. The Ohio Supreme Court accepted the following certified conflict:
> "[w]hether a tampering conviction requires proof that the defendant impaired
> evidence in an investigation by tampering with evidence related to the
> investigation." *Id*. at ¶ 8. The Court answered in the affirmative, concluding:
>
>> There is nothing in the record to suggest that the officers were
>> conducting or likely to conduct an investigation into trafficking or
>> possession of cocaine when Straley discarded the baggie. The
>> baggie of cocaine did not relate to either an ongoing investigation
>> of driving while under the influence of alcohol or driving without a
>> license and had no evidentiary value to a likely investigation of
>> public urination, and thus the record does not support a conviction
>> for tampering with evidence.

*Id.* at ¶ 19.

{¶ 22} Conversely, in this case Officer Lemal arrived on the scene, witnessed the remnants of a fight, heard a firearm drop, and saw it on the ground near Lyons and others. He ordered no one to move and Lyons fled. As a convicted felon Lyons was under a prohibition from owning or possessing a firearm. When Lyons fled from Lemal, the officer saw him discard a firearm. When Lyons fled the scene and discarded the firearm he was trying to avoid a weapons under disability charge. This was a continuing series of events and an ongoing investigation of the scene. Lyons discarding the firearm impaired its potential to be used as evidence. As there is sufficient evidence to support Lyons conviction for tampering with evidence, this assignment of error is meritless.

*State v. Lyons*, 93 N.E.3d at 145-46.

In determining whether the evidence was sufficient to support a petitioner's conviction, a federal habeas court must view the evidence in the light most favorable to the prosecution. *Wright v. West,* 505 U.S. 277, 296 (1992) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The prosecution is not affirmatively required to "rule out every hypothesis except that of guilt." *Id.* (quoting *Jackson,* 443 U.S. at 326). Instead, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Id.* at 296–97 (quoting *Jackson,* 443 U.S. at 326).

Moreover, federal habeas courts must afford a "double layer" of deference to state court determinations of the sufficiency of the evidence. As explained in *Brown v. Konteh*, deference must be given, first, to the jury's finding of guilt because the standard, announced in *Jackson v. Virginia,* is whether "viewing the trial testimony and exhibits in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 567 F.3d 191, 205 (6th Cir. 2009). Second, and even if a *de novo* review of the evidence leads to the conclusion that no rational trier of fact could have so found, a

federal habeas court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.; see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). This is a substantial hurdle for a habeas petitioner to overcome, and Petitioner has not done so here.

This Court reviews that decision under an extremely doubly deferential lens of both *Jackson v. Virginia* and the AEDPA. Notably, Petitioner "faces a nearly insurmountable hurdle." *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2011) (citation omitted). "A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 565 U.S. 1, 2 (2011). Further, and "[b]ecause rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Additionally, "a federal habeas court may overturn a state court's rejection of an insufficient-evidence claim only if the state court's decision was objectively unreasonable under § 2254(d)." *Danielak v. Brewer*, -- F. App'x --, 2018 WL 4049076, at *1 (6th Cir. Aug. 24, 2018) (citing Coleman v. Johnson, 566 U.S. 650, 651 (2012)).

> The precise definition of "objectively unreasonable" remains elusive. *Maynard v. Boone*, 468 F.3d 665, 670–71 (10th Cir. 2006) (discussing the failure of most federal courts to further define the phrase "objectively unreasonable" and collecting cases). Several of our sister circuits, however, have attempted to clarify the term. The First Circuit has explained that "if it is a close question whether the state decision is in error, then the state decision cannot be an unreasonable application," and that "'some increment of incorrectness beyond error is required.'" *McCambridge v. Hall*, 303 F.3d 24, 36 (1st Cir. 2002) (en banc) (quoting with approval *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000)).
>
> Taking a somewhat different tack, the Seventh Circuit has explained that a state court's decision is sustainable under AEDPA if it "is at least minimally consistent with the facts and circumstances of the case," *Hennon v. Cooper*, 109 F.3d 330, 335 (7th Cir. 1997), or even "if it is one of several equally plausible outcomes," *Hall v. Washington*, 106 F.3d 742, 749 (7th Cir. 1997), and that a decision is objectively unreasonable only where it is "well outside the boundaries of

permissible differences of opinion," *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002); *see also Mendiola v. Schomig*, 224 F.3d 589, 591 (7th Cir. 2000) (explaining that a state court's decision is not unreasonable if it took the controlling standard "seriously and produce[d] an answer within the range of defensible positions"). The Tenth Circuit has similarly opined that "[i]t is not enough that the decision is clearly wrong or that the reviewing court would have reached a contrary decision," but instead "the state court decision must be at such tension with governing U.S. Supreme Court precedents, or so inadequately supported by the record, or so arbitrary as to be unreasonable." *Maynard*, 468 F.3d at 671 (internal quotation marks omitted).

This court has not delved deeply into the issue, but one judge has indicated that where a state court makes "a close call" on a constitutional question, this "militates against the conclusion that the state court's application of the relevant Supreme Court precedent was objectively unreasonable." *Lopez v. Wilson*, 426 F.3d 339, 358 n. 1 (6th Cir. 2005) (en banc) (Cole, J., concurring) (internal quotation marks omitted). Moreover, the Supreme Court has recently explained that "[w]hen assessing whether a state court's application of federal law is unreasonable, 'the range of reasonable judgment can depend in part on the nature of the relevant rule' that the state court must apply." *Renico v. Lett*, ⸺ U.S. ⸺, 130 S.Ct. 1855, 1864, 176 L.Ed.2d 678 (2010) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)).

*Davis v. Lafler*, 658 F.3d at 534-35.

Here, Petitioner argues that the state appellate court unreasonably applied federal law because no evidence indicated that the firearm he threw to the ground was related to or had any value to the ongoing investigation being conducted by police at that time, as required under *Straley*. (*Reply*, ECF No. 7, PAGEID # 545.) However, the appellate court has rejected this argument. This Court is bound by that determination here. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991). Moreover, "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus." *Dukles v. Chuvalas*, No. 1:15-cv-21642017 WL 3447830, at *7 (N.D. Ohio July 5, 2017) (citing *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) (internal citation

omitted)); *see also Thomas v. Stephenson*, 898 F.3d 693, 700-01 (6th Cir. 2018) (deferring to the state court's interpretation of requirements of state law on sufficiency of evidence claim).

Thus, Claim three is also without merit.

**Recommended Disposition**

For all of the foregoing reasons, it is **RECOMMENDED** that this action be **DISMISSED**.

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(B)(1).

The parties are specifically advised that failure to object to the *Report and Recommendation* will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo,* and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed regarding whether a certificate of appealability should issue.

/s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE